ERNEST BROCKMEYER v. THE WASHINGTON NATIONAL BANK.

TWO BANKS—*Principal and Agent*—*Notice*—*Assent of Creditor, not Presumed.*   Where a savings bank delivers to a national bank money, drafts, notes, securities, etc., to pay a creditor, the relation between the debtor bank and the national bank is that of principal and agent until the creditor assents, or acts upon the transaction; and the assent of the creditor will not be presumed when he has no notice or knowledge of it.

### *Error from Washington District Court.*

THE opinion states the nature of the action, and the material facts.    The defendant *Bank* demurred to plaintiff's petition upon the ground that it did not state facts sufficient to constitute a cause of action in favor of plaintiff, and against it.    This demurrer the court sustained at the June term, 1887. *Brockmeyer* brings this ruling here for review.

*A. S. Wilson,* for plaintiff in error.

*Omar Powell,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Ernest Brockmeyer commenced this action against the Washington National Bank and E. C. Knowles, alleging that on April 10, 1884, E. C. Knowles was carrying

on the banking business in Hanover, in Washington county, under the name and style of The German Savings Bank; that on that day plaintiff deposited with the German Savings Bank $1,000, and the bank delivered to him a certificate of deposit therefor, payable in six months, with interest at the rate of four per cent. per annum; that soon after, Knowles closed the savings bank and deposited its money, drafts, notes, securities, etc., of the value of $6,378.81, with the national bank of which he was the president, then doing business at Washington, in Washington county; that at the time the total liabilities of the savings bank were $4,174.89; that the books of the German Savings Bank, showing its liabilities, were at the same time deposited with the Washington National Bank, which bank still retains possession of the same; that at the time the moneys, notes, books, etc., of the German Savings Bank were deposited with the Washington National Bank, Knowles posted on the front of the building where the German Savings Bank had been doing business in Hanover, two notices, one signed by him as president of the German Savings Bank, that the bank was closed for want of business, and that its assets would be transferred to and its liabilities assumed by the Washington National Bank; and the other notice, signed by himself as president of the Washington National Bank, that the assets of the German Savings Bank would be transferred to and its liabilities assumed by the Washington National Bank; that the notes, moneys and assets of the German Savings Bank were deposited with the Washington National Bank for the purpose of paying the liabilities of the German Savings Bank so far as necessary; that the Washington National Bank at the time and afterward had notice that the German Savings Bank had quit business, and also of all of its liabilities; that the Washington National Bank well knew that the assets of the German Savings Bank were deposited in that bank to be paid to the creditors of the German Savings Bank, to the extent of the liabilities of that bank to its creditors; that the Washington National Bank had notice of the indebtedness of the German Savings Bank to the plaintiff through E. C.

Knowles, its president, and also from the books of the German Savings Bank, then on deposit with it; that afterward the Washington National Bank fully recognized its duty to pay the liabilities of the German Savings Bank by paying them all off, excepting the claim of plaintiff; that all of the liabilities of the German Savings Bank except that of the plaintiff were paid within seventeen days after the assets of the German Savings Bank had been deposited with the Washington National Bank; that E. C. Knowles kept two accounts in the Washington National Bank, one in his own name, and one in the name of the German Savings Bank; that moneys to the amount of $6,378.81 were placed to the credit of the account of the German Savings Bank; that on June 17, 1884, the account of the German Savings Bank with the Washington National Bank showed a balance in favor of the German Savings Bank of $6,126.82; that this sum was more than was necessary to pay all of the claims against the German Savings Bank; that on June 17, 1884, the Washington National Bank, with full knowledge of the foregoing facts, transferred the balance of the money to the credit of the German Savings Bank to the account of E. C. Knowles; that prior to the maturity of the certificate delivered to the plaintiff by the German Savings Bank, Knowles became insolvent, and continued to be insolvent to the knowledge of the Washington National Bank; that on October 10, 1884, at the date of the maturity of the certificate of deposit, plaintiff presented the same properly indorsed, to the Washington National Bank, and demanded payment thereof, but that bank refused to pay the same; that neither that bank, E. C. Knowles, nor the German Savings Bank has ever paid the certificate, or any part thereof. Wherefore, plaintiff demanded judgment against the Washington National Bank, and also E. C. Knowles, for the amount of the certificate issued by the German Savings Bank, being the sum of $1,000, with interest at four per cent. per annum from April 10, 1884.

To the petition the Washington National Bank demurred upon the ground that it did not state facts sufficient to consti-

tute a cause of action in favor of plaintiff, and against it. This demurrer was sustained, exceptions taken, and the plaintiff brings the case here.

The first and principal question in the case is, To whom did the money, drafts, notes, securities, etc., deposited with the Washington National Bank belong at the time that bank transferred the funds of the German Savings Bank to the account of E. C. Knowles? If they belonged to the creditors of the German Savings Bank, or to the bank as trustee for the creditors, then Knowles had no right to the same until the creditors were fully satisfied. If, however, the Washington National Bank, on receiving the money, drafts, notes, securities, etc., stood in the relation of agent, it was the agent of the German Savings Bank, or of E. C. Knowles, who was the owner thereof and entitled to the control of its funds. There was no previous arrangement between the German Savings Bank and Ernest Brockmeyer by which Brockmeyer had constituted the Washington National Bank his agent or trustee to receive the money, nor was there any previous arrangement between E. C. Knowles and Brockmeyer by which E. C. Knowles was given authority to appoint the Washington National Bank the trustee for Brockmeyer or any other creditor. There is nothing alleged in the petition showing that prior to June 17, 1884, Brockmeyer assented to or accepted the deposit with the Washington National Bank, or that he ever relied upon that bank to pay his certificate, or that he elected to look to the Washington National Bank for the payment of his certificate. Prior to the time that the Washington National Bank turned over to E. C. Knowles the balance of the moneys, drafts, notes, securities, etc., deposited with it by the German Savings Bank, Brockmeyer never in any way participated in the transaction between the German Savings Bank and the Washington National Bank. Certainly the German Savings Bank could not, without the knowledge or consent of Brockmeyer, make the Washington National Bank his agent, so that the deposit in that bank would be in law a payment to him. If the German Savings Bank, or E. C. Knowles, assumed to

make the Washington National Bank his agent, Brockmeyer upon notice thereof might have given his assent, and thereby affirmed or ratified the act; but until such notice or knowledge or ratification, he would stand toward the Washington National Bank in the relation of a stranger. If Brockmeyer had expressed his assent to the deposit in any way, or had notice thereof, then perhaps the relation of trustee and *cestui que trust* would have been established between the National Bank and Brockmeyer; but he did not notify the National Bank, or present his certificate for payment, until several months after E. C. Knowles had withdrawn the deposit from the Washington National Bank. As Brockmeyer had not assented to the deposit with the Washington National Bank, or acquired any absolute right to the money by notice or otherwise before the balance was turned back, E. C. Knowles's intention to appropriate the money, drafts, etc., deposited with the Washington National Bank to the payment of the debts of the German Savings Bank was revocable. It was decided in *Center v. McQuesten*, 18 Kas. 476, that where a principal places money

in the hands of his agent to pay a debt due from

*Principal and agent; notice to third person.* him to another person, and such other person at the time has no knowledge of the direction and acts of the principal, the money belongs to the principal, unless such other person assents to the transaction, or in some other way becomes a party to it. In *Peak v. Ellicott*, 30 Kas. 156, the plaintiff deposited money in the Riley County Bank to pay a note held by another party. This court decided that the transaction of principal and agent existed thereby between the plaintiff and the bank, as regarded the specific fund, and that the plaintiff had the right to follow and reclaim the fund as a trust fund. (See also *Bank v. Ellicott*, 31 Kas. 173; *Simonton v. Bank*, 24 Minn. 216; *McHose v. Dutton*, 55 Iowa, 728.)

We have examined the authorities cited by counsel, in support of the proposition that the transaction between the German Savings Bank and the Washington National Bank made the latter bank a trustee for the benefit of Brockmeyer and

the other creditors of the German Savings Bank, and that neither the German Savings Bank nor E. C. Knowles could revoke or set aside the trust, excepting with the consent of the creditors interested.

In this case it is not alleged in the petition that Brockmeyer read the notices posted up by E. C. Knowles on the front of the building of the German Savings Bank, or that he had any knowledge of their contents, or that he had any notice or knowledge of the deposit made by the German Savings Bank ·with the Washington National Bank, before that bank transferred to E. C. Knowles the money, drafts, etc., deposited with it. It is not alleged in the petition that E. C. Knowles or the German Savings Bank was in failing circumstances when the Washington National Bank transferred to E. C. Knowles the money, drafts, etc., on deposit with it; nor is it clearly shown that the deposit by the German Savings Bank with the Washington National Bank was benefi-cial to Brockmeyer. Even if it be assumed that the assent of a creditor to a deposit with an agent may be presumed when he has notice or knowledge of it, such notice or knowledge will not be presumed.

*Deposit with agent for cred-itor; notice, not presumed.*

In 2 Story's Eq., § 1045, it is said:

"In regard to the other classes of cases above suggested, namely, those where the question may arise of an absolute appropriation of the proceeds of an assignment or remittance directed to be paid to particular creditors, courts of equity, like courts of law, will not deem the appropriations to the creditors absolute until the creditors have notice thereof, and have assented thereto; for, until that time, the mandate or direction may be revoked or withdrawn, and other appropriation made by the consignor or remittor of the proceeds."

In *Kelly v. Roberts*, 40 N. Y. 439, it was said in the opinion:

"It would be a very liberal extension of these cases if it should be held that, if A hand money to his own servant or agent, with instructions to carry and deliver it to B, which the servant or agent agrees to do, such instructions are irrevocable, and although A should change his mind before his agent or

servant sets out on his errand, he could not countermand the instructions and take back his money. Until such instructions have been acted upon in some manner, the servant continues the servant of A, and only his servant. So, where one hands money to his servant, agent, or friend, with a request that he visit the city and therewith pay a note due or about to become due, can it be seriously questioned that if, before anything further is done, such one concludes to use the money for some other purpose, or to pay some other debt, he may do so? I think not." (See also 11 Cent. L. J. 161–166.)

On account of the views expressed in the authorities above referred to, and considering that Brockmeyer never had any notice or knowledge, or assented to or acted upon the transaction between the banks, and never, by notice or otherwise, while the money, drafts, notes, securities, etc., of the German Savings Bank were on deposit with the Washington National Bank, claimed any part or portion of the same for the payment of his certificate, we think the order and judgment of the court below must be affirmed.

All the Justices concurring.